By the Court, Edmonds, J.
It seemed to be conceded on the argument that unless the original transaction between these parties was a pledge of the stock in question, the plaintiff’s bill could not be sustained ; and therefore it was that so much of the argument was directed to that point. One consideration very strenuously urged was the expression used in the note that the stock had been “ deposited as collateral security,” which it was insisted conveyed the idea of a pledge, and that alone. But such an expression is not of itself sufficient to determine the character of the transaction; for it has been held that even the use of the word “ pledge” has not that effect, ex to termini, and where it is the clear intent of the parties that the possession of the goods, <fcc. shall remain in the debtor until default in payment, it will be regarded as a mortgage, even if the word pledge is used. (Langdon v. Buel, 9 Wend. 80. Reeves v. Capper, 5 Bing. N. C. 186. Ferguson v. Union Furnace Co. 9 Wend. 345.)
There are two leading consideration to be regarded in determining whether the transaction is a pledge or a mortgage: namely, the title and the possession. If it is a mortgage, the legal title passes to and is vested in the creditor. (Story on Bailm. § 287. Langdon v. Buel, supra. Patchen v. Pierce, 12 Wend. 61.) With a pledge it is different; the legal title until a sale on default of payment or redemption, continuing in the pledgor. (Story on Bailm. supra. Cortelyou v. Lansing, 2 Caines’ Cas. in Error, 200. 2 Kent’s Com. 581.) The pawnee has indeed a qualified property in the article pledged, but upon a tender to him of the debt, he becomes divested even of that qualified property, and becomes a wrongdoer if after *543 that he persists in retaining the article pledged, from the pawner. (Story on Bailm. §§ 339, 341. Coggs v. Bernard, 2 Ld. Raym. 916.) The essential difference as to matter of right is, that in one the title passes, and in the other it does not. But the difference in substance and fact is, that in the case of a pawn or pledge, the possession must pass out of the pawner, but in the case of a mortgage it need not. In this case the possession and title both passed out of the debtor. The passing of the possession is consistent with either character; though if it had not passed, it would have been a mortgage. That fact will not therefore help to determine the question in this case. But the passing of the title to the creditor is decisive. If that had not happened, it would not be a mortgage. Having happened, it cannot be a pledge.
The result is that the deposit of these stocks by the plaintiff was a mortgage. It has all the characteristics of a mortgage, and is wanting in one of those essential to its being a pledge. Being a mortgage, on default of payment, the property became absolutely vested in the defendant. Such was the legal effect, and such seems to have been the intention of the parties; for the note provides that the defendant may sell the stock on the non-performance of the promise to pay; thus conferring on him another of the indicia of ownership, viz. the absolute power of disposal. This being, then, a mortgage, and not a pledge, it is not within the rule stated on the argument that it was always redeemable until sold ; and it may be barred by the statute of limitations or the lapse of time.
The view that we take of this case, renders it unnecessary for us to consider the effect of the statute of limitations as to suits in equity, on which the decision below mainly rested. Without expressing any opinion on that point, we think that the staleness of the demand ought to bar the plaintiff’s action. The note was barred by the statute of limitations in February, 1832, so that after that date it ceased, at the option of the maker, to be binding on him. If the stock depreciated in value, so as to leave a deficiency in paying the amount loaned, or if it became utterly worthless, nothing could be collected of the borrower. *544 He was discharged from his obligation. If he had been thus discharged by payment, he could have demanded his stock back again. Gould he not do so, if he was discharged from that obligation by the operation of law 1 It is to be feared that he might, were it not for the equitable rule of mutuality and the application of the bar of the lapse of time to both the parties to the contract and to the rights and obligations of both. We are therefore of opinion, in analogy to the statute of limitations, that the right to redeem ceased in February, 1832; and this bill not being filed till years afterwards, cannot be sustained.
Again, the agreement of 1828 barred the plaintiff’s right to recover. That was a discharge of the plaintiff from all legal responsibility to the defendant. No action could afterwards be brought against him, to make up any deficiency in the sum loaned to him. At that time there was a large deficiency. One of the banks having failed, and the stock of the other being below par, if the transaction had then been closed by a sale, the avails would, at the then prices, have fallen several hundred dollars short of paying the debt. The effect of the agreement was to release the plaintiff from any liability to make up this deficiency, to discharge him from all legal responsibility to the defendant for any part of the loan, and to waive all right of action against him for any indebtedness to the defendant “ of all sorts and kinds whatsoever.” If after that he had any right to demand a return of the stock, it was a right to have it back without paying any thing; because his debt w’as discharged as fully as if he had paid it. This was evidently not the intention of the parties; for the instrument then signed contained an express stipulation against its so operating. The agreement could operate only in one of three ways: either by discharging the debtor entirely from his responsibility and leaving to him the right to a return of the stock, without paying any thing; or to discharge him from his debt and leave the stock as the property of his creditor in lieu of his claim; or to keep alive the debt, and with it, the right, by paying it, to redeem the stock, with the personal obligation to make good any deficiency. The latter could not be true, because the debt, and all liability *545 to make up any deficiency, were absolutely discharged. The ■former was prevented from being true by the express stipulation of the instrument; and the only alternative left is that •which took away from the plaintiff, in July, 1828, all right to redeem the stock, at the same time that he was discharged from all liability to make it good. The decree of the assistant •vice chancellor must be affirmed with costs.